IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EXECUTIVE RISK INDEMNITY, INC., a corporation, | ) ) | Civ. No. 05-00727 SOM/LEK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING INTERVENORS' |
| | ) | MOTION TO ABSTAIN; ORDER |
| vs. | ) | DENYING PLAINTIFF'S MOTION TO |
| | ) | STRIKE NEW ARGUMENT |
| PACIFIC EDUCATIONAL SERVICES, | ) | INTERVENORS RAISED FOR THE |
| INC., a corporation; DAVID | ) | FIRST TIME IN THEIR REPLY |
| MONROE, an individual; DENISE | ) | MEMORANDUM IN SUPPORT OF THEIR |
| A. CRISWELL, an individual; | ) | MOTION TO ABSTAIN; ORDER |
| STEVEN CRISWELL, an | ) | DENYING INTERVENORS' |
| individual, | ) | ALTERNATIVE MOTION FOR |
| | ) | CERTIFICATION OF QUESTION; |
| Defendants, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFF'S |
| and | ) | MOTION FOR PARTIAL SUMMARY |
| | ) | JUDGMENT; ORDER DENYING |
| REBECCA S.P. YEE and BENJAMIN | ) | INTERVENORS' COUNTER-MOTION |
| T. FUJIMOTO, | ) | FOR PARTIAL SUMMARY JUDGMENT |
| | ) | |
| Intervenors. | ) | |
| _____ | ) | |

ORDER DENYING INTERVENORS' MOTION TO ABSTAIN; ORDER DENYING
PLAINTIFF'S MOTION TO STRIKE NEW ARGUMENT INTERVENORS RAISED FOR
THE FIRST TIME IN THEIR REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO ABSTAIN; ORDER DENYING INTERVENORS' ALTERNATIVE MOTION
FOR CERTIFICATION OF QUESTION; ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; ORDER
DENYING INTERVENORS' COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT

I.      INTRODUCTION.

        Plaintiff Executive Risk Indemnity, Inc. ("Executive

Risk") seeks a declaration that it owes no duty under an

insurance policy issued to Defendants Pacific Educational

Services ("PacEd"), Denise A. Criswell ("Criswell"), and David

Monroe ("Monroe") (collectively, "Defendants").  Criswell and

Monroe were the president and director of PacEd, respectively,

which registered the Hawaii College of Pharmacy ("College") as its trade name in September 2003.  In December 2004, Executive Risk issued its Power Source Directors and Officers Liability Policy No. 6801-9329 ("the Policy") to PacEd.  Although the College was never accredited, Defendants allegedly told prospective students that the College would be accredited.  Thereafter, Defendants enrolled students and collected tuition from them.

On July 27, 2005, the State of Hawaii Office of Consumer Protection ("the State") filed suit against Defendants in Hawaii state court, alleging that they had failed to make mandatory disclosures regarding the College's accreditation status; misrepresented the College's affiliations, initial class size, and structural facilities; retaliated against students; and systematically breached contracts.  In that state court action, the State prays for, among other things, restitution.

Defendants tendered the state court action to Executive Risk, which agreed to defend them subject to a reservation of rights.  In November 2005, Executive Risk brought the present action,[1] asking for a ruling that it has no obligation to defend or indemnify Defendants in the state court action.  This court allowed intervention by Intervenors Rebecca S.P. Yee and Benjamin

_____

[1] The complaint also names Steven Criswell as a defendant, but the parties stipulated to dismiss him from this action on April 11, 2006.

T. Fujimoto (collectively, "Intervenors"), who are receivers appointed by the state court to oversee the College.

Before this court are five motions:  (1) Intervenors' motion for abstention; (2) Executive Risk's motion to strike an argument raised in Intervenors' reply memorandum supporting their motion to abstain; (3) Intervenors' motion for certification of question to the Hawaii Supreme Court; (4) Executive Risk's motion for partial summary judgment; and (5) Intervenors' counter-motion for partial summary judgment.

The court declines to abstain from hearing this case.

The court also denies Executive Risk's motion to strike an argument by Intervenors, given the opportunity the court gave the parties to supplement their arguments.

The court denies Intervenors' motion for certification of question to the Hawaii Supreme Court.

Executive Risk and Intervenors have opposing motions for partial summary judgment on the issue of whether Executive Risk has a duty to defend and/or indemnify Defendants in the state court action.  The parties' dispute turns on whether the Policy covers claims for restitution.  Concluding that the Policy does not cover restitution, the court grants that portion of Executive Risk's motion for partial summary judgment asking for a declaration that it has no duty to defend or indemnify Defendants.  However, the court denies Executive Risk's requests

3

for reimbursement of defense costs and Rule 54(b) certification. The court also denies Intervenors' counter-motion for partial summary judgment.

II.     LEGAL STANDARD.

        A.    Motion to Abstain.

        The Declaratory Judgment Act embraces both constitutional and prudential concerns.  Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222 (9th Cir. 1998).  "A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution."  Id.   The lawsuit must also fulfill statutory jurisdictional prerequisites.  Id.  "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."  Id.  "This determination is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'"  Id. (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 250 (1952)).

        B.    Motion to Certify Question.

        "The Supreme Court of the United States has approved of the limited use of certified questions to state supreme courts when a federal court case involves an important question of state law which is both unclear under state legal precedent and would

4

be determinative in the instant case." Pai `Ohana v. United
States, 875 F. Supp. 680, 699 (D. Haw. 1995).  However, "where
there is 'sufficient state law to enable this court to make an
informed decision on the issues,'" certification is
inappropriate.  See id. at 700; Richardson v. City & County of
Honolulu, 802 F. Supp. 326, 344 n.30 (D. Haw. 1992).  "The
decision to certify a state law question is within the sound
discretion of the federal district court." Pai `Ohana, 875 F.
Supp. at 700.

C.   Motion for Summary Judgment.

Summary judgment shall be granted when

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr.,
383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc.,
198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal
purposes of summary judgment is to identify and dispose of
factually unsupported claims and defenses.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial.  See id. at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,

the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).  The burden initially falls upon the moving
party to identify for the court "those portions of the materials
on file that it believes demonstrate the absence of any genuine
issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323).

        "When the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)
(footnote omitted).  The nonmoving party may not rely on the mere
allegations in the pleadings and instead "must set forth specific
facts showing that there is a genuine issue for trial."  Porter,
383 F.3d at 1024 (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 256 (1986)).  "[I]f the factual context makes the
non-moving party's claim implausible, that party must come
forward with more persuasive evidence than would otherwise be
necessary to show that there is a genuine issue for trial."  Cal.
Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d
1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co.,
475 U.S. at 587).

III.      BACKGROUND FACTS.

The underlying facts in this case are not in dispute.

In September 2003, PacEd registered the trade name "Hawaii College of Pharmacy" with the State of Hawaii Business Registration Division.  Complaint filed in State v. Pacific Educational Services, et al., Civ. No. 05-1-1356-07 SSM (Haw. 1st Cir. Ct. July 27, 2005) ("State Complaint") ¶ 7.  Criswell "is the president, chief executive officer and chairman of the [PacEd] board of directors," and Monroe "is the secretary and a director" of PacEd.  State Complaint ¶¶ 5-6.

Upon learning of PacEd's trade name registration, the State notified Defendants of the requirements in Haw. Rev. Stat. chapter 446E for "Unaccredited Degree Granting Institutions." State Complaint ¶ 8.  Defendants assured the State that the College had "NO current students enrolled as we will not enroll or officially accept students into the program until the application for pre-candidacy to the American Council on Pharmaceutical Education [("ACPE")] has been submitted and approved for site visit and enrollment practices and procedures." State Complaint ¶ 9.  Defendants further stated, "We will not begin the process of educating pharmacists in the State of Hawaii without positive action via the application process per ACPE." State Complaint ¶ 9.  Notwithstanding their assurances, Defendants allegedly misrepresented the accreditation status of

7

the College, enrolled students, and collected tuition and other
fees.

In December 2004, Executive Risk issued the Policy to
PacEd, effective from December 21, 2004, to December 21, 2005.
See generally Ex. F (attached to Executive Risk's Motion for
Partial Summary Judgment ("MPSJ")).  The Policy provides coverage
for both PacEd, as the **"Insured Organization,"** as well as
Criswell and Monroe, as **"Insured Persons."**  See Ex. F (attached
to MPSJ) at Terms and Conditions Section II(H), Coverage Section
II(I).

The Policy provides that Executive Risk "shall pay **Loss**
on behalf of the **Insured Persons** [or **Insured Organization**]
resulting from any **D&O Claim** [or **Insured Organization Claim**]
. . . for **Wrongful Acts**."  Ex. F (attached to MPSJ) at Coverage
Section I(A)-(C).  The Policy also has an exclusion in
Endorsement No. 3 ("Exclusion"), which states:  "In consideration
of the premium charged, it is agreed that no coverage will be
available under the [Policy] for any **Claim** based upon, arising
from, or in consequence of Failure to Obtain/Receive
accreditation."  Ex. F (attached to MPSJ) at Endorsement No. 3.

The Policy defines a **"D&O Claim"** as "a civil proceeding
commenced by the service of a complaint or similar pleading . . .
against an **Insured Person** for a **Wrongful Act**."  Ex. F (attached
to MPSJ) at Coverage Section II(D).  Similarly, an **"Insured**

8

**Organization Claim**" is defined as "a civil proceeding commenced by the service of a complaint or a similar pleading . . . against an **Insured Organization** for a **Wrongful Act.**"  Ex. F. (attached to MPSJ) at Coverage Section II(I).  A "**Claim**" can be defined as either a "**D&O Claim**" when a civil complaint is brought against an "**Insured Person,**" or as an "**Insured Organization Claim**" when a civil complaint is brought against an "**Insured Organization.**"  Ex. F. (attached to MPSJ) at Coverage Section II(A).

The Policy covers "**Loss,**" defined as:

the total amount which any **Insured** becomes
legally obligated to pay as a result of any
**Claim** made against any **Insured** for **Wrongful
Acts**, including, but not limited to, damages
(including punitive or exemplary damages, to
the extent such damages are insurable under
the law . . . ), judgments, settlements, pre-
judgment and post-judgment interest and
**Defense Costs.  Loss** does not include:

. . . .

(2)  matters uninsurable under the law pursuant to
     which this Policy is construed[.]

Ex. F. (attached to MPSJ) at Coverage Section II(L).

On July 27, 2005, the State filed a complaint against PacEd, Criswell, and Monroe in <u>State v. Pacific Educational Services, et al.</u>, Civ. No. 05-1-1356-07 SSM (Haw. 1st Cir. Ct. July 27, 2005) ("the state court action").  In its complaint, the State alleges that Defendants:  (1) failed to disclose that the College was unaccredited, in violation of Haw. Rev. Stat.

§§ 446E-2(a), 480-2(a) (Count 1); (2) misrepresented that they had applied for future accreditation, in violation of Haw. Rev. Stat. §§ 446E-5(f), 480-2(a) (Count 2); (3) failed to maintain a statutory agent, in violation of Haw. Rev. Stat. §§ 446E-4(a), 480-2(a) (Count 3); (4) failed to produce documents and other information, in violation of Haw. Rev. Stat. §§ 446E-2(c), 480-2(a) (Count 4); (5) accepted and received tuition and fees, in violation of Haw. Rev. Stat. §§ 446E-5(e), 480-2(a) (Count 5); (6) misrepresented that they had applied for pre-candidacy accreditation, in violation of Haw. Rev. Stat. §§ 480-2(a), 481A-3 (Count 6); (7) misrepresented that they had applied for candidacy accreditation and falsely implied that such accreditation is automatic, in violation of Haw. Rev. Stat. §§ 480-2(a), 481A-3 (Count 7); (8) misrepresented that the College was affiliated with the University of Southern Nevada, in violation of Haw. Rev. Stat. §§ 480-2(a), 481A-3 (Count 8); (9) misrepresented the class size of the inaugural class, in violation of Haw. Rev. Stat. §§ 480-2(a), 481A-3 (Count 9); (10) misrepresented that construction of the College would be completed by early 2005, in violation of Haw. Rev. Stat. §§ 480-2(a), 481A-3 (Count 10); (11) "unilaterally . . . increas[ed] the time which some of the students would take to complete their studies from three to four years or even longer," in violation of Haw. Rev. Stat. § 480-2(a) (Count 11); and

(12) retaliated against students preparing to file complaints with the State, in violation of Haw. Rev. Stat. §§ 480-2 (Count 12).  State Complaint ¶¶ 14-74.  The State also alleges that Criswell (Count 13) and Monroe (Count 14) are personally liable.  State Complaint ¶¶ 75-80.  In Count 15, the State asks the court to enjoin Defendants "from continuing to violate Hawaii Rev. Stat. Chap. 446E, § 480-2(a) and § 481A-3."  State Complaint ¶¶ 81-82.

The fifteen-count complaint prays for:  (1) declaratory relief; (2) the appointment of a receiver; (3) injunctive relief; (4) civil penalties; (5) restitution; and (6) "attorneys' fees, costs, costs of investigation, interest, and other expenses." State Complaint Prayer for Relief ¶¶ 1-6.

On August 12, 2005, Defendants tendered the state court action to Executive Risk, which agreed to defend Defendants, subject to a reservation of rights.  <u>See</u> Exs. C-E (attached to MPSJ).

On August 24, 2005, the state court appointed Intervenors as co-receivers for Defendants' assets.

On May 24, 2006, Executive Risk filed the present lawsuit, seeking a declaration that it has no duty to defend or indemnify Defendants in the state court action.[2]  Intervenors

---

[2] Executive Risk also prays for a declaration that it has no duty to defend or indemnify Defendants in <u>Killian v. Pacific Educational Services Co., et al.,</u> Civ. No. 05-468 JMS/KSC (D. Haw. Aug. 9, 2005).  However, none of the motions presently before this court concerns the <u>Killian</u> action.

were allowed to participate in the action.  Default was later entered against Defendants.

IV.     ANALYSIS.

        A.   The Court Denies Intervenors' Motion to Abstain.

        Intervenors ask this court to abstain from hearing this action for declaratory relief because:  (1) the state court created a receivership and has exclusive power over the receivership property; and (2) the Burford and Younger abstention doctrines mandate abstention.  The court denies Intervenors' motion for abstention.

        1.   The State Court Receivership.

        Intervenors argue that this court should abstain from hearing this case "given the existence of the state court receivership."  Motion to Abstain at 5.  The state court appointed Intervenors as receivers of Defendants' assets and has "sole and exclusive power over [the] receivership property."  Motion to Abstain at 6-7.  Thus, Intervenors assert, under Harkin v. Brundage, 276 U.S. 36 (1928), the state court has priority jurisdiction over this case.  Executive Risk counters that "the Harkin rule on which [Intervenors] rely, is one applicable to in rem cases," not to this case, which is one in personam."  Opp. to Motion to Abstain at 28-29.

        "A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution."  Gov't

Employees Ins. Co., 133 F.3d at 1222.  "It must also fulfill statutory jurisdictional prerequisites."  Id. at 1222-23.  "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate.  This determination is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'"  Id. at 1223 (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 250 (1952)).

As Intervenors note, the Supreme Court has stated:

> As between two courts of concurrent and coordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by filing the bill is entitled to retain it without interference and can not be deprived of its right to do so because it may not have obtained prior physical possession by its receiver of the property in dispute; but where the jurisdiction is not the same or concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction.

Harkin, 276 U.S. at 43.  The Ninth Circuit has interpreted this to mean:  "a federal court may assert control over property and enjoin persons from further proceedings in a state court where the subject matter of the two suits is different or the jurisdiction is not concurrent, at least where . . . the state

13

court has not taken actual possession of the property." Sec. & Exch. Comm'n v. Wencke, 622 F.2d 1363, 1371-72 (9th Cir. 1980).

Intervenors do not contest that this case passes constitutional and statutory muster or that this court has the discretion to determine whether this declaratory action is appropriate. Intervenors simply maintain, "Since the state court created the receivership on September 21, 2005 and this court's jurisdiction was invoked subsequently by the filing of this action on November 22, 2005, the state court should have priority." Motion to Abstain at 6-7. However, the property subject to the receivership is not at issue in this federal court action. Even if this court concludes that Executive Risk has no duty to defend or indemnify Defendants, this court will not deprive the state court of its jurisdiction and control over the receivership. This court has jurisdiction over this declaratory action regardless of the state court receivership.

2.    The Burford Abstention Doctrine.

Burford abstention "protects complex state administrative processes from undue federal interference." Gilbertson v. Albright, 381 F.3d 965, 970 n.9 (9th Cir. 2004) (citing Burford v. Sun Oil Co., 319 U.S. 315 (1943)).  Under Burford, a federal court should abstain

> when timely and adequate state-court review
> of the proceedings or orders of state
> administrative agencies is available, and
> requires abstention "(1) when there are
> difficult questions of state law bearing on
> policy problems of substantial public import

> whose importance transcends the result in the
> case then at bar; or (2) where the exercise
> of federal review of the question in a case
> and in similar cases would be disruptive of
> state efforts to establish a coherent policy
> with respect to a matter of substantial
> public concern."

Id. (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1980)).  As this case does not concern the review of state agency proceedings or orders, Burford abstention does not apply.

### 3.   The *Younger* Abstention Doctrine.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court "'espoused a strong federal policy against federal-court interference with pending state judicial proceedings.'"  Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 799 (9th Cir. 2001).  "The Younger principle applies to civil proceedings, . . . in which important state interests are involved."  Id. "Absent extraordinary circumstances, Younger abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims."  Id.  "As a threshold condition to the above three requirements, 'Younger applies only when the relief the plaintiff seeks in federal court would 'interfere' with the ongoing state judicial proceeding.'"  Id. (quoting Green v. City of Tucson, 255 F.3d 1086, 1098 (9th Cir. 2001) (en banc)).

Executive Risk is not a party in the state court lawsuit, and it is unlikely to become a party in that action as "Hawaii law disfavors the joinder of an insurer in a third-party tort action absent some contractual or statutory provision." Allstate Ins. Co. v. Davis, 430 F. Supp. 2d 1112, 1121 (D. Haw. 2006) (citing Olokele Sugar Co. v. McCabe, Hamilton & Renny Co., 53 Haw. 69, 71-72, 487 P.2d 769, 770 (1971)). Thus, the state court has no reason to consider whether Executive Risk has any duty to defend or indemnify Defendants. See id. ("Here, Plaintiff is not a party in the underlying State Court Action and the state court has no reason to consider whether Allstate has any duty to defend or indemnify the Defendants."). Hearing this case will not interfere with the ongoing state judicial proceeding, and this court need not abstain under Younger. Accordingly, this court denies Intervenors' motion to abstain.

B.   The Court Denies Intervenors' Motion for Certification.

Intervenors ask this court to certify the question of whether claims for restitution are insurable to the Hawaii Supreme Court, arguing that the issue "invokes serious state policy considerations." "The Supreme Court of the United States has approved of the limited use of certified questions to state supreme courts when a federal court case involves an important question of state law which is both unclear under state legal precedent and would be determinative in the instant case." Pai `Ohana, 875 F. Supp. at 699. "Although federal courts should not

shirk their duty by routinely certifying questions to state supreme courts, certification under appropriate circumstances can result in significant conservation of the litigants' time and money as well as judicial resources." Id. at 700 (citing Richardson, 802 F. Supp. at 344-46).  In the long run, certifying questions "save[s] time, energy, and resources and helps build a cooperative judicial federalism." Id. (quoting Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)).  The Hawaii Supreme Court authorizes certified questions pursuant to Rule 13 of the Hawaii Rules of Appellate Procedure.  Haw. R. App. P. 13; cf. Haw. Rev. Stat. § 602-5(2) (1993) (granting the Hawaii Supreme Court jurisdiction to answer "any question or proposition of law certified to it by a federal district . . . court if the supreme court shall so provide by rule").

However, certification is inappropriate "where certification would further none of the above purposes and the answer to the certified question is not determinative" or "where there is 'sufficient state law to enable this court to make an informed decision on the issues.'" Pai `Ohana, 875 F. Supp. at 699 (citing Partington v. Bugliosi, 825 F. Supp. 906, 925-26 (D. Haw. 1993); Richardson, 802 F. Supp. at 344 n.30).  Hawaii's appellate case law explains the policy behind and purpose of restitution under Hawaii law.  That purpose is to deter wrongdoers from benefitting or profiting from their illegal conduct.  See Peine v. Murphy, 46 Haw. 233, 242-43, 377 P.2d 708,

714 (Haw. 1962); Hong v. Kong, 5 Haw. App. 174, 181, 683 P.2d 833, 840 (Haw. Ct. App. 1984) (noting that "restitution is aimed at depriving the fraudulent party of benefits obtained by the tort").  Hawaii's appellate rulings provide a sufficient basis for a prediction as to how the Hawaii Supreme Court would rule if faced with the question of the insurability of restitution.  See Pai `Ohana, 875 F. Supp. at 700 ("where there is 'sufficient state law to enable this court to make an informed decision on the issues' certification is inappropriate"); see, e.g., Weber v. Indem. Ins. Co. of N. Am., 345 F. Supp. 2d 1139 (D. Haw. 2004) ("Although there is no binding Hawaii law precedent directly on point on many of the state-law questions raised, the Court finds sufficient case law from Hawaii and other jurisdictions to be able to predict Hawaii law with confidence.").  Certification is inappropriate here.

> C.   Executive Risk Has No Duty to Defend or Indemnify Defendants in the State Court Action.

Executive Risk's motion for partial summary judgment seeks a declaration that it need not provide a defense to Defendants in the state court action or indemnify Defendants for any restitution awarded in that action.  Intervenors' counter-motion for partial summary judgment seeks a declaration that Executive Risk is obligated to defend and indemnify Defendants.

At the hearing on this matter, Intervenors clarified that the only claim for relief in the state court action for which coverage under the Policy is sought is the claim for

restitution.  The parties agree that the Policy excludes coverage of "matters uninsurable under the law pursuant to which this Policy is construed."  The parties also agree that Hawaii law governs construction of the Policy and that neither the Hawaii appellate courts nor the Hawaii legislature has expressly stated whether restitution is insurable.  Executive Risk urges this court to predict that the Hawaii Supreme Court would follow most other jurisdictions that hold restitution uninsurable. Intervenors argue that, under the facts of this case, restitution is insurable and therefore covered by the Policy.

Case law from Hawaii and other jurisdictions indicates that the Hawaii Supreme Court would likely hold that restitution is uninsurable.  Under Hawaii law, the Policy does not cover restitution, and Executive Risk has no duty to defend or indemnify Defendants in the state court action.[3]

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (Haw. 1994).  The insurance policy must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended.  Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw.

---

[3]  The parties also dispute whether the Exclusion bars coverage of the state court action.  Because this court concludes that Executive Risk has no duty to defend or indemnify on the ground that restitution is not covered by the Policy, the court need not reach this alternative issue presented by the parties.

413, 423, 665 P.2d 648, 655 (Haw. 1983); see also Haw. Rev. Stat.
§ 431:10-237 (1993) ("Every insurance contract shall be construed
according to the entirety of its terms and conditions as set
forth in the policy.").  Because insurance contracts are
contracts of adhesion, they must be construed liberally in favor
of the insured, and any ambiguities must be resolved against the
insurer.  Put another way, the rule is that insurance policies
are construed in accordance with the reasonable expectations of a
layperson.  Dawes, 77 Haw. at 131, 883 P.2d at 42.

        The burden is on the insured to establish coverage
under an insurance policy.  See Sentinel Ins. Co. v. First Ins.
Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (Haw.
1994).  The insurer has the burden of establishing the
applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

        The obligation to defend an insured is broader than the
duty to pay claims.  Id. at 287, 875 P.2d at 904.  The duty to
defend "arises wherever there is the mere potential for
coverage."  Id.  The duty to indemnify is owed "for any loss or
injury which comes within the coverage provisions of the policy,
provided it is not removed from coverage by a policy exclusion."
Dairy Road Partners v. Island Ins. Co., 92 Haw. 398, 413, 992
P.2d 93, 108 (Haw. 2000) (citation omitted).

        As previously indicated, the state court complaint
seeks restitution, which Intervenors argue is covered by the
Policy.  Ex. A (attached to MPSJ) at 15.  Under Haw. Rev. Stat.

20

§ 487-14(a) (1998), Hawaii courts may order restitution in actions brought by the Office of Consumer Protection, such as the state court action.  Haw. Rev. Stat. § 487-14(a) ("In any action brought by the director of the office of consumer protection, the court may include in its orders or judgments such provisions as may be necessary to effect restitution."); cf. Haw. Rev. Stat. § 487-14(b) (providing that corporate directors and officers may be jointly and severally liable for a corporation's restitution obligations).  If the Policy does not cover restitution, there is no potential for coverage, and Executive Risk has no duty to defend or indemnify Defendants.

The parties agree that the Policy unambiguously defines **"Loss"** as not including "matters uninsurable under the law pursuant to which this Policy is construed."  However, because Hawaii's appellate courts have not determined whether restitution is insurable under Hawaii law, the parties disagree as to whether restitution is uninsurable.

Intervenors first argue that the Hawaii legislature, not this court, should decide whether restitution is insurable under Hawaii law.  Intervenors' Supp. Memo. at 8-10.  Intervenors point out that the Hawaii legislature has already determined that "punitive and exemplary damages are uninsurable unless specifically agreed upon."  Intervenors' Supp. Memo. at 8.  They argue, "Clearly the Hawaii legislature could have made restitution uninsurable as well if it so desired such to be the

policy of this State."  Intervenors' Supp. Memo. at 8.  This court agrees that the Hawaii legislature has not expressly stated whether restitution is insurable.  It does not necessarily follow, however, that the matter is therefore beyond judicial consideration.

Restitution is an equitable remedy traditionally awarded by courts, and ordering restitution "is within the recognized power and within the highest tradition of a court of equity."  See Porter v. Warner Holding Co., 328 U.S. 395, (1946) ("ordering the return of that which rightfully belongs to the purchaser . . . is within the recognized power and within the highest tradition of court of equity"); Murdock-Bryant Constr., Inc. v. Pearson, 703 P.2d 1197, 1202 (Ariz. 1985) (noting that restitution is "a flexible, equitable remedy"); Am. Psychometric Consultants, Inc. v. Workers' Comp. Appeals Bd., 43 Cal. Rptr. 2d 254, 268 (Cal. Ct. App. 1995) ("Restitution is an equitable remedy which has been primarily utilized by courts to prevent unjust enrichment."); cf. State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315, 331 n.12, 978 P.2d 753, 769 n.12 (Haw. 1999) (noting the "equitable principles of restitution"); Bus. Dev. Corp. v. Kamikawa, 92 Haw. 659, 664 994 P.2d 591, 596 (Haw. Ct. App. 1999), reversed in part on other grounds, 92 Haw. 608, 994 P.2d 540 (Haw. 2000) (noting the "equitable spirit of restitution").  In Hawaii, "courts have inherent equity . . . powers," which "are derived from the state Constitution and are

not confined by or dependent on statute." <u>Richardson v. Sport Shinko (Waikiki Corp.)</u>, 76 Haw. 494, 507, 880 P.2d 169, 182 (Haw. 1994).  Intervenors seem to agree with this, noting that "the courts have always possessed inherent equitable powers to award [restitution]."  Intervenors' Supp. Memo. at 11.  Because Hawaii courts' power to award equitable restitution is derived from the state constitution and "is not confined by or dependent on statute," Hawaii courts need not wait for legislative guidance to determine when an award of restitution is proper.  It follows that Hawaii courts, as well as this court sitting in diversity, need not await legislative action to determine whether restitution is insurable.

Of course, any judicial consideration of whether restitution is insurable turns, in this case, on Hawaii law. Although Hawaii's appellate courts have not directly spoken on this issue, they have discussed restitution and its purpose of deterring fraudulent conduct by wrongdoers.  Restitution "is concerned generally with giving relief for unjust enrichment." <u>Hong</u>, 5 Haw. App. at 181, 683 P.2d at 840.  "Restitution restores a person 'to the position he formerly occupied, either by the return of something which he formerly had or by the receipt of its equivalent in money.'"  <u>Id.</u> at 182, 683 P.2d at 841.  The law of restitution "imposes 'quasi-contractual liability for unjust enrichment' upon 'a person receiving a benefit which it is unjust

for him to retain.'" Id.  In distinguishing between restitution and damages, the Intermediate Court of Appeals of Hawaii says:

> Restitution . . . often leads to the recovery of a money judgment for an amount paid to the fraudulent party, or for the value of goods or services transferred to him, but such a recovery cannot properly be described as damages.  Damages are awarded to compensate the injured party for harm caused by the tort, whereas restitution is aimed at depriving the fraudulent party of benefits obtained by the tort.

Id. at 181, 683 P.2d at 840.

In Peine, 46 Haw. at 242-43, 377 P.2d at 714, the Hawaii Supreme Court stated that a "conscious wrongdoer is, by policy of law, dealt with severely and he may not make a profit and is responsible for all losses arising out of his act."  The court noted:

> When property is restored to an owner who has been deprived of it by fraud, the owner of the property should have the profit rather than the one who made the profit therefrom after obtaining it by fraudulent representation, although the enhanced value of the property puts the original owner of the property in a better position than that in which he would have been had no wrong been done to him.

Id. at 243, 377 P.2d at 714.  If, on the other hand, restitution does not include profit realized by the wrongdoer, the court said there would be "little or no deterrent effect, for wrongdoers would run no risk of liability to their victims of fraud beyond returning what they fraudulently obtained."  Id.

24

In <u>Allstate Insurance Co. v. Kim</u>, 121 F. Supp. 2d 1301, 1306 (D. Haw. 2000), Judge Alan C. Kay of this court considered whether an exclusion in an insurance policy that precluded coverage for damages caused by intentional acts was against public policy.  Hawaii courts had not addressed exclusions regarding intentional acts, and Judge Kay relied on California substantive law, noting that "the Hawaii Supreme Court has frequently followed California Courts in rendering opinions on insurance matters."  <u>Id.</u> at 1307 n.3.  Judge Kay stated that an exclusion of coverage for damage caused by intentional acts was consistent with "the sound public policy that a wrongdoer should not profit from his own wrongdoing or be indemnified against the effects of his wrongdoing."  In language equally applicable to the restitution situation, Judge Kay explained, "The public policy against insurance for losses resulting from such acts is usually justified by the assumption that such acts would be encouraged, or at least not dissuaded, if insurance were available to shift the financial burden of the loss from the wrongdoer to the insurer."  <u>Id.</u> at 1306-07.

Under California law, restitution is not insurable in "situations in which the defendant is required to restore to the plaintiff that which was wrongfully acquired."  <u>Bank of the West v. Superior Court</u>, 833 P.2d 545, 555 (Cal. 1992).  The Supreme Court of California explains:

> When the law requires a wrongdoer to disgorge
> money or property acquired through a

> violation of the law, to permit the wrongdoer
> to transfer the cost of disgorgement to an
> insurer would eliminate the incentive for
> obeying the law.  Otherwise, the wrongdoer
> would retain the proceeds of his illegal
> acts, merely shifting his loss to an insurer.

Id. (citing Jaffe v. Cranford Ins. Co., 168 Cal. App. 3d 930, 935 (Cal. Ct. App. 1985)).

Intervenors argue that California cases, such as Bank of the West and Jaffe, are distinguishable and inapplicable to the question before this court.  They point out that Bank of the West involved a policy "that covered 'damages,'" while here, "the Policy coverage language in contrast is . . . for 'loss.'"  Counter-MPSJ at 17-18.  Intervenors distinguish Jaffe on the ground that, unlike the present case, it concerned imprisonment and criminal fines.  Id. at 15.

In Bank of the West, 833 P.2d at 552-53, the Supreme Court of California concluded that an insurance policy providing coverage for "damages" did not cover "money that has been wrongfully obtained."  The court explained, "It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired."  Id.  The court noted that coverage is barred when "the defendant is required to restore to the plaintiff that which was wrongfully acquired."  Id. at 1270.  Thus, the court held that "insurable damages" did not include disgorgement orders, which are restitutionary in nature.  Id. at 1266.

26

In Jaffe, 168 Cal. App. 3d at 932, a psychiatrist was prosecuted for fraudulent receipt of Medi-Cal payments.  The insured's malpractice insurer refused to provide a defense in the criminal action.  Id.  After the insured was acquitted, he sued the insurer for reimbursement of his defense costs.  Id. at 932-33.  Noting that his policy covered "damages," the insured argued that one consequence of a conviction might have been an order requiring him to reimburse the state for Medi-Cal overpayments.  Id. at 934; see also Bank of the West, 833 P.2d at 554.  The court rejected the insured's argument as dependent on an overly broad interpretation of the term "damages."  See Bank of the West, 833 P.2d at 554.  The court distinguished the term "damages," which "describes a payment made to compensate a party for injuries suffered," from "restitution," "in which the defendant is required to restore to the plaintiff that which was wrongfully acquired."  Jaffe, 168 Cal. App. 3d at 935.  The court stated, "At least absent demonstrably unusual circumstances, we have doubts whether an insurance policy which purported to insure a party against payments of a restitutionary nature would comport with public policy."  Id.

Intervenors are correct in asserting that the policies at issue in Bank of the West and Jaffe referred to "damages," not "loss."  The issue before the courts in those cases was nevertheless the same as the issue now before this court: whether restitutionary relief is insurable.  Bank of the West and

Jaffe are persuasive to the extent they discuss the policies behind concluding that restitution is uninsurable.

Furthermore, another judge of this court, in a case governed by California law, has previously relied on Bank of the West and Jaffe as requiring the conclusion that restitution is uninsurable.  In Unified W. Grocers, Inc. v. Twin City Fire Ins. Co., 371 F. Supp. 2d 1234 (D. Haw. 2005), reversed on other grounds, 2006 WL 2337373 (9th Cir. 2006), now-Chief Judge Helen Gillmor of this court noted that, under California law, "it is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired."  Id. at 1243 (citing Bank of the West, 883 P.2d at 545; Jaffe, 168 Cal. App. 3d at 935).  Judge Gillmor also cited Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co., 2004 WL 2958479 (S.D. Cal. Jul. 14, 2004), which "reconfirmed that damages associated with the restoration of 'ill-gotten gain' are uninsurable as a matter of law."  After noting that Bank of the West and Pan Pacific "represent the majority view on this issue," Judge Gillmor concluded that "restitution is not insurable as a matter of [California] law."  Unified W. Grocers, Inc., 371 F. Supp. 2d at 1243-45.

Other jurisdictions agree with California courts in holding restitution uninsurable.  See Level 3 Comm., Inc. v. Fed. Ins. Co., 272 F.3d 908, 911 (7th Cir. 2001) (applying Illinois law) ("An insured incurs no loss within the meaning of the

insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return."); Granite State Ins. Co. v. Aamco Transmissions, Inc., 57 F.3d 316, 320 (3d Cir. 1995) ("We also point out that if 'unfair competition' includes coverage for a claim by a customer against an insured, the insured 'would simply shift the loss to its insurer and, in effect, retain the proceeds of its unlawful conduct." (citing Bank of the West, 833 P.2d at 553)); Alanco Techs., Inc. v. Carolina Cas. Ins. Co., 2006 WL 1371633, at *4 (D. Ariz. 2006) (applying Arizona law) ("Because rescissory damages are uninsurable under the law, and defense costs are recoverable only for covered losses, Plaintiffs have suffered no loss under the policy."); Vigilant Ins. Co. v. Credit Suisse First Boston Corp., 782 N.Y.S.2d 19, 20 (N.Y. App. Div. 2004) ("The policy defines defense costs as a component of 'Loss,' which 'shall not include matters which are uninsurable under the law . . . . As indicated, restitution of ill-gotten funds is not insurable under the law . . . [and] defense costs are only recoverable for covered claims."); Cent. Dauphin Sch. Dist. v. Am. Cas. Co., 426 A.2d 94, 97 (Pa. 1981) ("a political subdivision's return of tax monies to its taxpayers collected by an unlawful tax is uninsurable"); Nortex Oil & Gas Corp. v. Harbor Ins. Co., 456 S.W.2d 489, 494 (Tex. Civ. App. 1970) ("An insured . . . does not sustain a covered loss by restoring to its rightful owners that

which the insured, having no right thereto, has inadvertently acquired. . . .  The insurer did not contract to indemnify the insured for disgorging that to which it was not entitled in the first place.").

Intervenors ask this court to disregard the California cases and to rely instead on Kansas law.  Intervenors' Supp. Memo. at 12 (citing State Farm Fire & Cas. Co. v. Martinez, 995 P.2d 890 (Kan. Ct. App. 2000)).  Intervenors argue that "it is the public policy of Hawaii to favor victims by allowing wrongdoers to insure themselves against punitive damages if the insurer agrees" and that this policy "is much more akin to that of Kansas than California."  Intervenors' Supp. Memo. at 10 (citing Haw. Rev. Stat. § 431:10-240).

State Farm Fire & Casualty Co., 995 P.2d at 869, involved the question of whether Daniel A. Martinez ("Martinez") was entitled to insurance benefits relating to his unauthorized practice of law and deceptive and unconscionable acts committed in violation of the Kansas Consumer Protection Act.  State Farm, which retained legal services for Martinez when the attorney general of Kansas brought an action against him in that regard, sought a declaratory judgment that it had no duty to defend or indemnify Martinez under its policy.  Id.  The policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages."  Id.  One of the issues faced by the Court of Appeals of Kansas was whether civil penalties

30

constituted "damages" under the policy.  Id.  State Farm had argued that "the civil penalties sought by the attorney general are penal in nature and therefore are not 'damages' as defined by the policy."  Id. at 895.  After noting that "it would be contrary to public policy to allow a wrongdoer to insure against civil penalties associated with his or her own actions," the court affirmed the trial court's summary judgment order in favor of State Farm.  Contrary to Intervenors' assertions, this public policy supports the conclusion that restitution is uninsurable.

A conclusion that restitution is insurable would contravene the express purpose of restitution recognized by Hawaii courts, which is to deter wrongdoers from benefitting or otherwise profiting from their improper actions.  See Peine, 46 Haw. at 242-43, 377 P.2d at 714.  Because Hawaii courts seek to return illegally obtained property to victims, the Hawaii Supreme Court would likely rule that claims for the return of ill-gotten gains should not be insurable.  Restitution is uninsurable under Hawaii law and therefore not covered by the Policy.  See Ex. F (attached to MPSJ) at Coverage Section II(L).  Executive Risk has no duty to defend or indemnify Defendants.  See Sentinel Ins. Co., 76 Haw. at 287, 875 P.2d at 904; Dairy Road Partners, 92 Haw. at 413, 992 P.2d at 108.

> D.   The Court Denies Without Prejudice Executive
>      Risk's Request for Reimbursement of Defense Costs.

Executive Risk asks this court to "declare that [PacEd], Monroe, Criswell, and Intervenors are obligated to

reimburse to [Executive Risk] all Defense Costs [Executive Risk] has paid or will pay in connection with the [state court action]." MPSJ at 36. In making this request, Executive Risk cites <u>Scottsdale Insurance Co. v. Sullivan Properties, Inc.</u>, 2006 WL 505170 (D. Haw. 2006)). The court denies this request without prejudice.

In <u>Scottsdale Insurance Co.</u>, 2006 WL 505170, at *12, Chief Judge Helen Gillmor of this court considered motions for summary judgment on the issue of whether Scottsdale Insurance Company ("Scottsdale") had a duty to defend the insureds in an underlying action. Applying Hawaii law, Chief Judge Gillmor found that Scottsdale had no duty to defend. Although Scottsdale had not moved for summary judgment on the issue of whether it was entitled to reimbursement of defense costs previously paid, <u>id.</u> at *2, the court stated, "If Scottsdale did not have a duty to defend Defendants, it is entitled to reimbursement of the defense costs expended on Defendants' behalf in the Underlying Lawsuit." <u>Id.</u> Chief Judge Gillmor noted in a footnote:

> The Court did not locate any Hawaii state law on the issue of whether an insurer is entitled to reimbursement of defense costs expended where the court later determines that the insurer did not have a duty to defend. California courts, however, have recognized an insurer's right to seek reimbursement of defense costs where that right has been reserved in the reservation of rights letter. <u>See</u> <u>Scottsdale Ins. Co. v. MV Transportation</u>, 36 Cal. 4th 643, 31 Cal. Rptr. 3d 147, 115 P.3d 460 (Cal. 2005); <u>Buss v. Superior Court of Los Angeles</u>, 16 Cal. 4th

>               35, 65 Cal. Rptr. 2d 366, 939 P.2d 766,
>               776-78 (Cal. 1997).

Id. n.3.

Having found Scottsdale entitled to reimbursement, Chief Judge Gillmor then turned to the issue of the amount of reimbursement.  She stated:

>               Although based on the Court's ruling,
>               Scottsdale is entitled to reimbursement of
>               costs and expenses incurred by it with regard
>               to Defendants' defense in the Underlying
>               Lawsuit, Scottsdale has not moved for summary
>               judgment on its reimbursement claim (Count IV
>               of the Complaint).
>
>               In moving for summary judgment as to
>               Count IV, the Court DIRECTS Scottsdale to
>               document all costs and expenses for which it
>               seeks reimbursement.

Id. at *12.

Notwithstanding Chief Judge Gillmor's decision in Scottsdale, this court denies Executive Risk's request for an order requiring reimbursement of defense costs.  In denying the request, this judge expresses no opinion on whether, under Hawaii law, defense costs are or are not reimbursable pursuant to a reservation of rights based on a determination that an insurer had no duty to defend.  That is a question that this judge leaves for another day.  The present denial is instead grounded on the following reasons.

First, the burden is on Executive Risk to show entitlement to reimbursement.  Executive Risk does not meet its burden of showing such entitlement under Hawaii law.  As Chief

Judge Gillmor noted, there is no Hawaii law directly on point. While California cases support Executive Risk's argument, Executive Risk appears not to have even attempted to find analogous Hawaii appellate law on the issue.  It is true that, in deciding the restitution issue, this court relied on decisions from California and other jurisdictions.  However, those decisions struck a common chord with Hawaii decisions that, while not directly addressing restitution, bore some relation to that issue.  By contrast, with respect to the reimbursement issue, Executive Risk offers no "common chord" cases from Hawaii. Executive Risk thus presents this court with an insufficient basis on which to predict how the Hawaii Supreme Court would rule on the reimbursement issue.  It may be that such cases exist, but that Executive Risk has not sought them out.  Alternatively, it may be that such cases do not exist, in which event the court wonders why Executive Risk did not ask this court to certify the matter to the Hawaii Supreme Court.

        Although a ruling on reimbursement would be a major decision on Hawaii insurance law that could have a tremendous impact on the duty to defend in hundreds of other cases, Executive Risk is asking the court to make such a ruling in a case in which the court does not have the benefit of adversarial briefing.  The insureds have defaulted in this action, suggesting that they have no assets at risk.  That may explain the almost cavalier manner in which Executive Risk seeks the ruling.  That

is, even if the court ruled in Executive Risk's favor, any reimbursement judgment might be currently uncollectible. Certainly, even an uncollectible judgment may serve a salutary purpose.  It puts others on notice of the risk of dealing with the judgment-debtor.  It may hamper the judgment-debtor's ability to obtain further loans or permits that might run afoul of the law.  It ensures that, if the judgment-debtor becomes wealthy in the future, the judgment-debtor can be made to disgorge amounts it previously caused others to lose.  Still, the reimbursement ruling Executive Risk seeks may be nothing but a "throw-away" argument for it in the context of this case, even though such a ruling could overhaul insurance litigation in Hawaii.

It is not unusual for defense costs in a typical action to be in the tens or hundreds of thousands of dollars.  Many insureds are not well-funded entities or individuals.  It is easy to imagine the impact of a ruling in Executive Risk's favor on, say, an insured who is an individual being defended in an automobile accident case, faced with having to reimburse an insurer $25,000 in defense costs.  While a party's financial condition does not erase contractual obligations, this court, in examining whether such obligations even exist, recognizes the impact of any substantive ruling on the reimbursement issue. With the insureds' default making the argument before this court one-sided, it is all the more critical to hold Executive Risk to its burden.  As Executive Risk fails to meet its burden, this

court declines to grant Executive Risk's request on the record
before the court.

Second, Executive Risk has provided no description of
the specific costs and expenses it seeks to recover.  On the
record before it, this court cannot determine whether Executive
Risk is entitled to recover "all" of the defense costs it has
paid in the state court action.  In fact, given the absence of
any detail, this court cannot even tell that Executive Risk is
entitled to recover "any" defense costs.  For that reason, this
court declines to make even a preliminary ruling on whether
Executive Risk is indeed entitled to reimbursement and, assuming
the court found such entitlement, to leave only the amount for
later determination.

The court denies Executive Risk's request for
reimbursement without prejudice to later consideration.  However,
Executive Risk, is, of course, free to simply abandon this
argument if, in the context of the present case, it is of no
import to Executive Risk.

    E. The Court Denies Executive Risk's Request for
      Rule 54(b) Certification.

In its motion for partial summary judgment, Executive
Risk asks this court to "direct entry of judgment pursuant to
Rule 54(b) of the Federal Rules of Civil Procedure."  MPSJ at 36.
The court denies the request.

Under certain circumstances, a court may enter final
judgment on a claim before final judgment is entered on all

36

claims.  Rule 54(b) of the Federal Rules of Civil Procedure states:

> When more than one claim for relief is
> presented in an action, whether as a claim,
> counterclaim, cross-claim, or third-party
> claim, or when multiple parties are involved,
> the court may direct the entry of a final
> judgment as to one or more but fewer than all
> of the claims or parties only upon an express
> determination that there is no just reason
> for delay and upon an express direction for
> the entry of judgment.

"Rule 54(b) certification is proper if it will aid 'expeditious decision' of the case."  Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 797 (9th Cir. 1991).  However, "Rule 54(b) certification is scrutinized to 'prevent piecemeal appeals in cases which should be reviewed only as single units.'"  Id. at 797-98 (quoting McIntyre v. United States, 789 F.2d 1408, 1410 (9th Cir. 1986)).

Executive Risk provides no argument as how Rule 54(b) certification "will aid 'expeditious decision' of the case." See id.  This court has not ruled on Executive Risk's claims regarding the Killian action and declines to allow piecemeal appeals.

V.      CONCLUSION.

In light of the foregoing, the court denies (a) Intervenors' motion for abstention, motion for certification of question, and counter-motion for partial summary judgment, and (b) Executive Risk's motion to strike.  The court grants in part and denies in part Executive Risk's motion for partial summary judgment.  That motion is granted to the extent it seeks a ruling

37

that the Policy does not cover claims for restitution.  That motion is denied without prejudice to the extent it seeks reimbursement of defense costs and Rule 54(b) certification.

This leaves for future adjudication Executive Risk's claims concerning the <u>Killian</u> action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 25, 2006.

/s/ Susan Oki Mollway
_____
Susan Oki Mollway
United States District Judge

**Executive Risk Indemnity, Inc. v. Pacific Educational Services, et al.**, Civ. No. 05-00727 SOM/LEK; ORDER DENYING INTERVENORS' MOTION TO ABSTAIN; ORDER DENYING PLAINTIFF'S MOTION TO STRIKE NEW ARGUMENT INTERVENORS RAISED FOR THE FIRST TIME IN THEIR REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO ABSTAIN; ORDER DENYING INTERVENORS' ALTERNATIVE MOTION FOR CERTIFICATION OF QUESTION; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; ORDER DENYING INTERVENORS' COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT.